CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED

JAN 3 0 2009

JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| WILLIAM R. COUCH, ) | |
|     Plaintiff, ) | Civil Action No. 7:08-cv-00518 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| R. MATHENA, et al., ) | By: Hon. Michael F. Urbanski |
|     Defendants. ) | United States Magistrate Judge |

Plaintiff William R. Couch, a Virginia inmate proceeding pro se, filed this action pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343, claiming that the defendants retaliated against him for exercising his First Amendment right to free speech.[1] Couch seeks declaratory and injunctive relief, as well as damages in excess of $11,000.00. For the reasons stated herein, the court finds that Couch's complaint fails to state a claim and, therefore, grants defendants' motion to dismiss.

I.

Couch, an inmate at Keen Mountain Correctional Center ("KMCC"), alleges that he was employed as a law library clerk at KMCC. Upon taking the job in 2006, Couch signed a "Law Clerk Confidentiality and Compensation Statement," which, in relevant part, stated that "I . . . understand that any and all information about another inmate's legal issues or criminal convictions that I become privy to as part of my assigned job duties as a clerk in the KMCC law library is to be maintained in strict confidence. I understand that I am to discuss such information with neither other inmates or any other individuals. . . . I understand that proven failure to comply with . . . the above conditions may result in termination of my employment in the law library and/or action under DOP 861." On

---

[1] This case was transferred to the undersigned on January 6, 2009 after the parties consented to jurisdiction of a United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c).

April 12, 2008, while Couch was employed as a law library clerk, another inmate, Blount, asked Couch to write to Blount's court-appointed direct-appeal attorney, Ritter, to ask him to continue representing Blount during a potential habeas corpus proceeding. Couch admits that he then wrote a letter to Ritter, under his own signature, asking Ritter to be Blount's attorney of record during his habeas proceeding and offering to prepare the habeas petition for Ritter to submit to the court. Couch states that he does not admit that he mailed this letter[2]; however, Ritter responded to a letter from Couch dated April 16, 2008, declining to represent Blount in a habeas proceeding, but thanking Couch for his offer to "ghost-write" the petition. Inasmuch as Ritter's response letter was not marked legal mail and did not have any indication that it was from an attorney on the outside envelope, the mailroom staff at KMCC opened the letter and saw that it was addressed to Couch, but concerned representation of Blount. Finding this suspicious, the mailroom staff reported the letter to KMCC's Institutional Investigator. Couch's supervisor, Donald Vass, learned of Couch's letter to Ritter and terminated Couch's employment as a law library clerk, on the basis that Couch had violated the Law Clerk Confidentiality and Compensation Statement in communicating with Ritter regarding Blount's legal issues.

Couch argues that by terminating his employment as a law library clerk because of his letter to Ritter, the defendants retaliated against him for exercising his First Amendment right to free speech.

## II.

Couch's allegation of retaliation fails to state a claim upon which relief may be granted. A

---

[2] The court finds Couch's statement that he did not mail the letter to be incredible given that he admits he wrote the letter on April 16, 2008 and Ritter responded to a letter from Couch that was dated April 16, 2008.

2

retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two -- that is, the adverse action was motivated, at least in part, by the plaintiff's protected conduct. Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 686 (4th Cir. 2000). Couch has not shown that he was engaged in constitutionally protected conduct, and therefore, he cannot establish a constitutional violation.

In this case, the "protected conduct" at issue is Couch's First Amendment right to free speech. The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. CONST. amend. I. "The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000). With regard to prisoners, the Supreme Court has noted that "in the First Amendment context . . . a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives on the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974).

The court is aware of the special circumstances that arise in the confines of prisons. Not only should the court allow great deference in the formation of prisons regulations, but perhaps more importantly, to the judgment of prison officials. See O'Lone v. Estate Shabazz, 482 U.S. 342, 350 (1987). Generally, it is difficult for a prisoner to show that his conduct is protected because prison regulations are allowed to infringe on prisoner's rights as long as they are reasonably related to legitimate penological interests. See Turner v. Safley, 482 U.S. 78, 89 (1987). Therefore, if a

prisoner violates a reasonable prison regulation, he is not engaged in "protected conduct," and cannot state a constitutional claim of retaliation.

In articulating the Turner test, the Court identified several "factors that are relevant to, and that serve to channel, the reasonableness inquiry." Thornburgh v. Abbott, 490 U.S. 401, 414 (1989). To determine whether the defendants violated Couch's constitutional rights, the court must consider four factors: (1) whether there is a "valid, rational connection" between the regulation and a legitimate and neutral governmental interest; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to inmates; (3) whether accommodation of the asserted right will have an impact on prison staff, on inmates' liberty and on the allocation of limited prison resources; and (4) whether the regulation represents an "exaggerated response" to prison concerns. Turner v. Safley, 482 U.S. 78 (1987); Shaw v. Murphy, 532 U.S. 223, 229-30 (2001). The burden of proof under the Turner analysis is on the prisoner to disprove the validity of the prison regulation at issue. Overton v. Bazzetta, 539 U.S. 126, 132 (2003).

In this case, Couch challenges KMCC's policy of not allowing inmate law library clerks to discuss information regarding law library patron inmates' legal issues, learned during the course of their employment, with other inmates or any other individual. As an initial matter, an inmate does not have an independent right to help other prisoners with their legal claims. See Gibbs v. Hopkins, 10 F.3d 373, 378 (6th Cir. 1993); Smith v. Maschner, 899 F.2d 940, 950 (10th Cir. 1990), Gassler v. Rayl, 862 F.2d 706 (8th Cir. 1988). However, even if KMCC's policy did infringe on Couch's constitutional rights, his claim nevertheless fails because the policy is reasonable. The court can conceive of a valid rational connection between that policy and KMCC's legitimate interests in safety and security. If law library clerks were permitted to discuss a case or legal issue of a patron

4

inmate with other inmates or individuals, the patron inmate's safety could be compromised and access to the information could be abused. Moreover, there could be issues with loss of attorney-client privilege if clerk inmates were allowed to discuss a patron inmate's legal issues with the patron inmate's attorney. With regard to the second factor under Turner, clerk inmates are not prohibited from discussing their own legal issues with other inmates. Further, if clerk inmates wish to "assist" another inmate by discussing his legal issues with another individual, they may do so if they discontinue their employment as a law library clerk. With respect to the third factor, if clerk inmates were allowed discuss patron inmate's legal issues with others, patron inmates would be impacted as discussed above under the first factor. Finally, Couch has not suggested, and the court does not find, any obvious, easy alternatives to the policy that suggest that the policy is an exaggerated response to KMCC's safety and security concerns. Accordingly, the court finds that KMCC's policy is reasonable. Therefore, the court finds that Couch was not engaged in constitutionally protected conduct and, thus, has failed to state a claim of constitutional magnitude.[3]

---

[3] To the extent Couch may be challenging the constitutionality of the termination of his employment, his claim also fails. Inmates have no constitutional right to job opportunities while incarcerated and an inmate's expectation of obtaining or retaining a specific prison job, or any job, does not implicate a protected constitutional right. See, e.g., Gibson v. McEvers, 631 F.2d 95, 98 (7th Cir. 1980); Kitchen v. Upshaw, 286 F.3d 179, 186-187 (4th Cir. 2002) (finding that the plaintiff had not been deprived of any liberty interest when prison officials refused to allow him to participate in a work-release program even though the sentencing order had stated that he may participate in such a program if eligible); Coakley v. Murphy, 884 F.2d 1218, 1221 (9th Cir. 1989) (holding that inmates have no protected property interest in continuing in work-release program). Since inmates have no independent constitutional right to a prison job, prison officials may generally terminate an inmate from his job for any reason without offending federal due process principles. See Bulger v. United States Bureau of Prisons, 65 F.3d 48, 49 (5th Cir. 1995) (applying Sandin v. Conner, 515 U.S. 472, 484 (1995) (a prisoner's liberty "interests will be generally limited to the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.")). Because Couch has no legal expectation of maintaining his employment as law library clerk, his loss of that job does not implicate any federal due process principles; as such, he has no federal right to notice or a hearing before he was terminated. To the extent Couch believes he may have a state law claim for wrongful termination, this court declines to exercise supplemental jurisdiction over any such claim.

## III.

For the stated reasons, plaintiff's complaint will be dismissed for failure to state a claim upon which relief may be granted. To the extent plaintiff believes the instant complaint may have stated a claim under state law, the court declines, pursuant to 28 U.S.C. § 1367(c), to exercise supplemental jurisdiction over any state law claim.

**ENTER**: This 30th day of January, 2009.

_____
United States Magistrate Judge